UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THERESA L. SCHREIB,<br><br>               Plaintiff,<br><br>      v.<br><br>AMERICAN FAMILY MUTUAL INSURANCE CO.,<br><br>               Defendant. | CASE NO. C14-0165JLR<br><br>ORDER DENYING PARTIAL SUMMARY JUDGMENT |

## I.    INTRODUCTION

This matter comes before the court on Plaintiff Theresa Schreib's motion for partial summary judgment. (Mot. (Dkt. # 13).) This case arises from a dispute over the value of Ms. Schreib's claim for underinsured motorist ("UIM") benefits against Defendant American Family Mutual Insurance Co. ("American Family"). Having considered the submissions of the parties, the balance of the record, and the relevant law,

//

ORDER- 1

and deeming oral argument unnecessary,[1] the court DENIES Ms. Schreib's motion for partial summary judgment.

## II.   BACKGROUND

Ms. Schreib was involved in an uncontested liability automobile collision in April, 2009. (Compl. (Dkt # 3) ¶ 2.1.) Ms. Schreib alleges that, as a result of the collision, she incurred injuries to her neck, back, and hip, as well as a mild traumatic brain injury. (*Id.* ¶ 2.5.) American Family disputes the extent to which Ms. Schreib's alleged injuries were caused by the collision. (*See generally* Resp. (Dkt. # 18).)

At the time of the collision, Ms. Schreib held an automobile insurance policy from American Family that included, among other things, UIM coverage with a policy limit of $500,000.00. (Policy (Dkt. # 20-19).) Ms. Schreib settled her claim against the tortfeasor who caused the collision and his insurer for $75,000.00, the tortfeasor's policy limit. (Davis Decl. (Dkt. # 14) ¶ 4.)[2] Ms. Schreib also received $56,300.00 in personal

---

[1] "When a party has had an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice in refusing to grant oral argument." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (internal punctuation omitted). Here, the issues have been thoroughly briefed by the parties and oral argument would not be of assistance to the court. Accordingly, the court will not hold oral argument.

[2] American Family moves to strike various portions of Mr. Davis' first declaration as being hearsay, constituting improper opinion testimony, or lacking foundation. (*See* Resp. at 1.) Because the court does not rely on the portions of Mr. Davis' declaration that are hearsay, opinion testimony, or lack foundation, the court denies American Family's motion to strike as moot.

The court, however, notes that although Ms. Schreib provided the court with hundreds of pages of exhibits to comb through, her motion for summary judgment does not contain any citations to these exhibits. (*See* Mot.) The parties are reminded that "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). On a motion for summary judgment, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1) (internal punctuation omitted).

injury protection ("PIP") medical and income loss benefits from her policy with American Family.  (*Id.* ¶ 5.)

In addition to recovering those amounts, Ms. Schreib submitted a claim to American Family for UIM benefits in spring of 2011.  (*See* Am. Fam. 5/3/11 Letter (Dkt. # 20-1).)  Ms. Schreib's attorney testifies that her initial request for UIM benefits was supported by "copies of Ms. Schreib's medical and billing records to date, employment records and/or wage loss documentation, and copies of the settlement demand packages sent to the tortfeasor's auto insurers." (Davis Decl. ¶ 8.)  The record before the court, however, does not include either Ms. Schreib's initial request for UIM benefits or the documentation that allegedly accompanied it.  (*See generally* Davis Decl. Exs. 1-17; Dkt.)

Over the next several months, Ms. Schreib and American Family corresponded numerous times regarding her claim for UIM benefits.  Initially, American Family "pended" Ms. Schreib's UIM demand and requested more information.  (Am. Fam. 5/3/11 Letter.)  Shortly thereafter, in June, 2011, American Family agreed to voluntarily waive its $56,300.00 PIP subrogation claim against Ms. Schreib's settlement with the tortfeasor's insurer.  (Am. Fam. 6/2/11 Letter (Dkt. # 20-6).)  In September, 2011, Ms. Schreib provided American Family with a medical report created in connection with her application for Social Security benefits.  (Davis Decl. ¶ 10.)  This report concluded that Ms. Schreib was medically disabled due to a traumatic brain injury.  (*See* SS Rep. (Dkt. # 3).)  In addition, Ms. Schreib's lawyer testifies that over the course of several months, his office provided American Family with "medical records, medical bills, witness

ORDER- 3

statements, tax returns, and expert reports" supporting the value of her UIM claim.  (2d Davis Decl. (Dkt. # 23) ¶ 3.)

In November, 2011, American Family informed Ms. Schreib that it had determined that the combination of her settlement and the PIP waiver, which results in a total recovery $131,300.00, was sufficient to fully compensate her for the injuries sustained in the collision.  (Am. Fam. 11/1/11 Letter (Dkt. # 20-7); Am. Fam. 11/9/11 Letter (Dkt. # 20-8).)  American Family based this decision on an independent medical review completed in September, 2009, by a neurosurgeon and a chiropractor.  (*See* 11/9/11 Letter.)  This review, which evaluated Ms. Schreib's neck, back, and hip injuries, as well as the mental difficulties she was allegedly experiencing, concluded that further treatment was no longer necessary or likely to be effective and that Ms. Schreib was capable of performing her functional job activities going forward.  (*See* IME Rep. (Dkt. # 19-1).)

In February, 2012, Ms. Schreib submitted a "settlement demand package" to American Family that included additional medical documentation regarding her injuries and formally requested payment of the $500,000.00 UIM policy limit.  (Davis Decl. ¶ 15; Davis 2/9/12 Letter (Dkt. # 14-8); Am. Fam. 2/10/12 Letter (Dkt. # 20-9); Am. Fam. 2/14/12 Letter (Dkt. # 20-10).)  This additional documentation, which is not contained in the record currently before the court, apparently consisted of medical records, reports, and billings concerning the various evaluations, procedures, and physical therapy that Ms. Schreib had undergone, including, for example, one doctor's diagnosis that she was suffering from a mild traumatic brain injury.  (*See* Davis 2/9/12 Letter; 2d Davis Decl.

¶ 4.) The formal demand for payment identified past medical expenses of over $90,000.00 and estimated Ms. Schreib's damages as of that date date, including pain and suffering, to be over $900,000.00. (*Id.*)

American Family agreed to consider the new medical evidence and submitted Ms. Schreib's file to two consultants—an orthopedic surgeon and a neuropsychologist—for review. (Am. Fam. 2/14/12 Letter.) The orthopedic surgeon concluded that Ms. Schreib's hip injury was unrelated to the vehicular collision and instead stemmed from certain preexisting conditions. (Ortho Review (Dkt. # 19-6) at 14-16.) The neuropsychologist concluded that Ms. Schreib did not sustain a traumatic brain injury from the collision. (Neuro Review (Dkt. # 19-4) at 15, 18.)

In April, 2012, Ms. Schreib provided American Family with a report from an expert in vocational assessment and rehabilitation who concluded that Ms. Schreib was unemployable due to cognitive impairment caused by her mild traumatic brain injury. (Davis 4/2/09 Letter (Dkt. # 14-11); Job Rep. (Dkt. # 14-10).) Ms. Schreib also provided American Family with a report from an economist that estimated Ms. Schreib's past and future lost earnings capacity to be over $2 million. (Davis Decl. ¶ 19; Earnings Rep. (Dkt. # 14-12).)

In June, 2012, American Family formally informed Ms. Schreib that it had determined that she was fully compensated by her recovery to date of $131,300.00, and that American Family therefore would not offer her any more compensation. (Am. Fam. 6/9/12 Letter (Dkt. # 20-12).) American Family based this decision on the reviews

ORDER- 5

1   provided by the orthopedic surgeon and neuropsychologist concluding that Ms. Schreib's

2   hip and brain injuries were not causally connected to the collision.  (*Id.*)

3        Dissatisfied with this response, in December, 2012, Ms. Schreib requested that her

4   claim be submitted to binding arbitration pursuant to the terms of the American Family

5   policy.  (Davis 12/14/12 Letter (Dkt. 14-16).)  In preparation for the arbitration, the

6   parties engaged in more medical fact-finding and evaluation.  Specifically, Ms. Schreib

7   supported her claim for benefits with, among other materials, (1) a report from her

8   counselor, (2) a report by a neurological consultant, and (3) an independent medical

9   examination by a medical doctor.  (Jaeger Decl. ¶ 6; Dkt. ## 19-19 through 19-21.)

10  American Family, for its part, supported its position that Ms. Schreib had been fully

11  compensated with (1) a report from a neuropsychological expert, (2) a report from an

12  orthopedic surgeon, (3) a report from a rehabilitation and vocation expert, and (4) a report

13  from an economist.  (Jaeger Decl. ¶ 4; *see* Dkt. ## 19-7 through 19-18.)

14       On September 24, 2013, the day before arbitration, Ms. Schreib reiterated her

15  demand for the limit of the UIM policy and left her offer open until 4 p.m.  (Jaeger Decl.

16  (Dkt. # 19) ¶ 14.)  American Family countered with an offer for $100,000.00.  (*Id.*)  In

17  response, Ms. Schreib offered $450,000.00.  (*Id.*)  American Family then increased its

18  offer to $125,000.00.  (*Id.*)  At that point, negotiations stalled.  (*Id.*)

19       At the close of the three-day arbitration, the arbitrator ruled in favor of Ms.

20  Schreib.  (*See* Arb. Ruling (Dkt. # 14-17).)  The arbitrator found that Ms. Schreib did

21  sustain a mild traumatic brain injury as a result of the collision.  (*Id.* at 3.)  The arbitrator

22  awarded Ms. Schreib total damages of $1,186,988.00, which included past medical

expenses of approximately $95,000.00, as well as past and future loss of income and pain and suffering. (*Id.* at 5.)

Ms. Schreib then filed this action against American Family, alleging claims for breach of contract, violations of Washington's Insurance Fair Conduct Act, and insurance bad faith. (*See* Compl.) In the motion currently before the court, Ms. Schreib requests a ruling that American Family's offer to settle her claim for substantially less than the amount she ultimately recovered in arbitration constitutes an unfair and deceptive claims settlement practice as defined by the Washington Administrative Code. (*See generally* Mot.) American Family opposes this motion.[3] (*See* Resp.)

### III. ANALYSIS

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 permits a court to grant summary judgment where the moving party demonstrates (1) the absence of a genuine issue of material fact and (2) entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of production of showing an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its burden of production, the burden then shifts to the non-moving party to designate specific facts

---

[3] The court granted American Family permission to file a responsive brief that was two pages over-length. (*See* Dkt. # 16.) Nonetheless, American Family effectively exceeded even that amount by filing a brief containing three pages of single spaced text. (*See* Resp. at 2-4.) This district's local rules provide: "The text of any typed or printed brief must . . . with the exception of quotations, be double spaced." Local Rules W.D. Wash. LCR 10(e)(1). The parties are advised that disregard for the local rules is a factor the court will consider when evaluating future requests for procedural accommodations.

demonstrating the existence of genuine issues for trial. *Id.* at 324. The non-moving party must provide affidavits or other sources of evidence that "set forth specific facts showing that there is a genuine issue for trial" from which a factfinder could reasonably find in the non-moving party's favor. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In determining whether the factfinder could reasonably find in the non-moving party's favor, "the court must draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**B.  Washington Insurance Regulations**

Washington's Insurance Fair Conduct Act ("IFCA") prohibits any person in the business of insurance from engaging in unfair or deceptive acts or practices when conducting insurance business. RCW 48.30.010(1). Under IFCA, the state insurance commissioner is authorized to promulgate regulations defining unfair or deceptive insurance practices. *Id.* § (2). Accordingly, Washington insurance regulations identify nineteen specific unfair claims settlement practices. *See* WAC 284-30-330. The Washington Supreme Court has held that a violation of any one of these regulations, in addition to constituting an unfair insurance practice under IFCA, also constitutes a per se unfair trade practice under the Washington Consumer Protection Act and is relevant to establishing insurance bad faith. *See Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 792 P.2d 520, 530 (Wash. 1990); *Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 283-84 (Wash. 2002).

Pursuant to these regulations, "[c]ompelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings" constitutes an unfair practice in the settlement of insurance claims. WAC 284-30-330(7). Washington courts have determined that there is an implied reasonableness requirement in this definition. *See Keller v. Allstate Ins. Co.*, 915 P.2d 1140, 1145 (Wash. Ct. App. 1996) ("Admittedly WAC 284-30-330(7) is one of a few subsections that does not explicitly set forth a reasonableness standard. We believe, however, that such a standard is implicit in the above statutes and in WAC 284-30-330."); *see also Beasley v. State Farm Mut. Auto. Ins. Co.*, No. C13-1106RSL, 2014 WL 1494030, at *5 (W.D. Wash. Apr. 16, 2014). As such, a discrepancy between the settlement offered and the final recovery is insufficient, standing alone, to show that the insurer engaged in an unfair insurance practice. *Id.*; *see also Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1036 (Wash. Ct. App. 2000). Rather, the issue turns on whether the insurer had a "reasonable justification" for its low settlement offer. *Keller*, 915 P.2d at 1145.

To determine whether the insurer had a reasonable justification for its offer, the fact-finder must "consider the circumstances and reasoning underlying the original offer." *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 17 P.3d 1229, 1236 (Wash. Ct. App. 2001). In general, courts find reasonable justification for low offers when the offers are supported by the medical evidence available to the insurer at the time of the offer. *See, e.g.*, *Keller*, 915 P.2d at 1145 (finding that the insurer had reasonable justification for its

ORDER- 9

1  settlement offer when, as of the date of the offer, medical evidence supported a
2  conclusion that the plaintiff's injuries were minor and her damages did not exceed the
3  combination of the insurer's offer and the underinsured motorist's policy limit); *Beasley*,
4  2014 WL 1494030, at *6 (finding that an insurer's low offer was reasonable because the
5  "offer was based on the information [the insurer] had available at the time and its
6  determination that Plaintiff was partially at fault"). However, "[t]he ultimate issue of the
7  reasonableness of the offer is for the finder of fact to determine." *Anderson*, 2 P.3d at
8  1036. Therefore, if a reasonable fact-finder could find that the evidence available to the
9  insurer provided a reasonable justification for the offer, summary judgment in favor of
10  the insured is not appropriate. *See, e.g.*, *id.* (reversing summary judgment because there
11  was sufficient evidence to support a jury finding that the insurer's low offer was
12  supported by reasonable justification); *Merrill v. Crown Life Ins. Co.*, No. 13-CV-0110-
13  TOR, 2014 WL 2159266, at *11 (E.D. Wash. May 23, 2014) (denying summary
14  judgment because, although insurer's low offer forced the plaintiff to file a lawsuit to
15  recover full benefits, "questions of material fact remain concerning the reasonableness of
16  [the insurer's] conduct").

17  **C.     Application to Ms. Schreib's Claim**

18      Ms. Schreib argues that American Family's initial offer of $0.00 for her UIM
19  claim, as well as its last minute offer of $125,000.00, constitute unfair or deceptive trade
20  practices under Washington's insurance regulations. (*See* Mot.) The court agrees that
21  the offers of $0.00 and $125,000.00 are "substantially less" than the $1,186,988.00 award
22  that Ms. Schreib ultimately recovered through arbitration, and that therefore American

Family's conduct falls within the scope of WAC 284-30-330(7). *See, e.g.*, *Morella v. Safeco Ins. Co. of Illinois*, No. C12-0672RSL, 2013 WL 1562032, at *3 (W.D. Wash. Apr. 12, 2013) (finding that a settlement offer of $1,500.00 for a claim that was ultimately valued by an arbitrator at $62,000.00 fell within WAC 284-30-330(7)). The critical question, then, is whether American Family had a "reasonable justification" for its low offers. *Keller*, 915 P.2d at 1145. After examining the record before it, the court concludes that the issue of reasonableness is a material question of fact inappropriate for disposition on a motion for summary judgment. *See Anderson*, 2 P.3d at 1036.

For purposes of clarity, the court defines the date of American Family's first "offer" of $0.00 to be the June, 2012, date on which American Family formally responded to Ms. Schreib's "settlement demand package" by reiterating its refusal to offer any UIM compensation. (*See* Am. Fam. 6/19/12 Letter.) At that time, the information available to American Family supporting its conclusion that Ms. Schreib had already been fully compensated included:

- An independent medical examination by a neurosurgeon and a chiropractor concluding that no medical treatment after September 2009 was necessary and that Ms. Schreib was able to return to work.

- A review by an orthopedic surgeon concluding that Ms. Schreib's hip injury was unrelated to the collision.

- A review by a neuropsychologist concluding that Ms. Schreib did not sustain a mild traumatic brain injury from the collision.

ORDER- 11

1  (*See* IME Rep.; Ortho Review; Neuro Review.)  On the other hand, the information

2  available to American Family supporting Ms. Schreib's claim for benefits included:

- A report finding Ms. Schreib disabled for purposes of Social Security benefits.
- Various medical records, reports, and billings concerning the evaluations, procedures, and physical therapy that Ms. Schreib had undergone, including, for example, materials relating to a diagnosis of mild traumatic brain injury.
- A vocational assessment concluding that Ms. Schreib was unemployable.
- An estimate of Ms. Schreib's total lost earnings.

(*See* SSA Rep.; Davis 2/9/12 Letter; Job Rep.; Earnings Rep.)  As such, American Family's offer was supported by medical evidence and by the conclusions of multiple medical experts.  *See Keller*, 915 P.2d at 1145; *Beasley*, 2014 WL 1494030, at *6.  Ms. Schreib argues it was unreasonable to offer her $0.00 for her claim when she presented evidence of past medical expenses exceeding $90,000.00 (and therefore exceeding the $75,000.00 offset from her settlement).  (*See* Mot.)  American Family, however, relied on recommendations by medical experts that Ms. Schreib's hip injury and alleged mild traumatic brain injury were not caused by the collision to conclude that the associated medical costs were not recoverable.  (*See* Am. Fam. 6/19/12 Letter.)  It may very well be that the medical evidence in Ms. Schreib's favor outweighs the medical evidence in American Family's favor.  At this stage, however, the court may not weigh the evidence, and "must draw all reasonable inferences in favor of the nonmoving party." *Reeves*, 530

U.S. at 150.  Given the record currently before the court, a reasonable juror could find that American Family had a reasonable justification for concluding that Ms. Schreib had already been fully compensated for her injuries.  *See Merrill*, 2014 WL 2159266, at *11; *Anderson*, 2 P.3d at 1036.  As such, summary judgment is inappropriate.

Turning to the circumstances of American Family's second offer of $125,000.00, by the eve of the arbitration, the medical evidence supporting both parties' positions had only multiplied.  Ms. Schreib has supplemented her medical records with reports by her counselor, a neurological consultant, and an independent medical examiner, and American Family had consulted a neuropsychological expert, an orthopedic surgeon, a rehabilitation and vocation expert, and an economist.  (*See* Dkt. ## 19-7 through 19-21.) Within this universe of medical facts and testimony, each party could point to substantial evidence supporting its respective position, namely, that Ms. Schreib had suffered a debilitating minor traumatic brain injury from the collision, or that the severity of Ms. Schreib's injuries could not be attributed to the collision.  (*See id.*)  Again, it may be that the balance of this evidence tips in Ms. Schreib's direction, and therefore American Family should have concluded that she was entitled to a higher settlement offer.  However, in light of the medical evidence supporting American Family's position, the court cannot say that a reasonable juror could not find that American Family's low offer lacked a reasonable justification.  After all, if, as American Family believed, Ms. Schreib's mild traumatic brain injury was not attributable to the collision, the $125,000.00 offer arguably approached adequate compensation for her remaining injuries.  (*See* Davis 2/9/12 Letter (basing the majority of the claim for benefits on the

ORDER- 13

traumatic brain injury).)  Moreover, a review of the record suggests that accurately diagnosing mild traumatic brain injuries is not a simple or straight-forward proposition and that the existence and cause of Ms. Schreib's brain injury was genuinely up for dispute.  (*Compare, e.g.*, Dkt. 19-10 (neuropsychological evaluation by Dr. Breen concluding that Ms. Schreib had not suffered a traumatic brain injury) *with* Dkt. # 19-20 (neuropsychological evaluation by Dr. Goodwin summarizing past medical treatment, noting the "difference of opinion regarding whether or not she sustained a mild traumatic brain injury," and deferring to the viewpoint that Ms. Schreib suffered a brain injury from the collision)).  Accordingly, the court concludes that the reasonableness of American Family's second offer is an outstanding question of material fact.  As such, summary judgment at this stage is inappropriate.[4]  *See Liberty Lobby*, 477 U.S. at 252 (1986).

//

//

//

//

//

---

[4] American Family moves, in the alternative, for a continuance under Rule 56(d).  (*See* Resp.)  Under Rule 56(d), if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  "To prevail under this Rule, parties opposing a motion for summary judgment must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists."  *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox*, 353 F.3d 1125, 1129 (9th Cir. 2004).  Because the court finds that there are questions of fact on the record currently before the court, the court denies American Family's motion for a continuance as moot.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Ms. Schreib's motion for partial summary judgment (Dkt. # 13).

Dated this 25th day of August, 2014.

JAMES L. ROBART
United States District Judge