UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THERESA L. SCHREIB, | CASE NO. C14-0165JLR |
| Plaintiff, | PROTECTIVE ORDER |
| v. | |
| AMERICAN FAMILY MUTUAL INSURANCE CO., | |
| Defendant. | |

## I.   INTRODUCTION

This matter comes before the court on Defendant American Family Mutual

Insurance Company's ("American Family") two motions for a protective order.  (1st Mot.

(Dkt. # 31); 2d Mot. (Dkt. # 34).)  Having considered the submissions of the parties, the

balance of the record, and the relevant law, the court GRANTS the motions.

//

//

ORDER- 1

## II.    BACKGROUND

This case arises in the aftermath of an insurance dispute between Plaintiff Theresa Schrieb and American Family.  Ms. Schrieb was involved in an uncontested liability automobile collision in April, 2009.  (Compl. (Dkt # 3) ¶ 2.1.)  Ms. Schreib alleges that she suffered several injuries as a result of this collision.  (*Id.* ¶ 2.5.)  At the time, Ms. Schreib held an automobile insurance policy from American Family that included underinsured motorist ("UIM") coverage.  (Policy (Dkt. # 20-19).)  Ms. Schreib submitted a claim to American Family for UIM benefits in spring of 2011.  (*See* Am. Fam. 5/3/11 Letter (Dkt. # 20-1).)  Over a year passed, during which the parties investigated the claim and exchanged correspondence.  (*See generally* 8/25/14 Order (Dkt. # 24) at 2-6 (describing the parties' claims adjustment process).)  In June, 2012, American Family informed Ms. Schreib that it would not offer her any further compensation for her injuries because it found she had already been fully compensated by the combination of her settlement with the tortfeasor's insurance company and American Family's waiver of its personal injury protection ("PIP") subrogation claim. (*See* Am. Fam. 6/9/12 Letter (Dkt. # 20-12).)

Dissatisfied with this response, in December, 2012, Ms. Schreib requested that her claim be submitted to binding arbitration pursuant to the terms of the policy.  (Davis 12/14/12 Letter (Dkt. 14-16).)  American Family retained Michael Jaeger, of an independent law firm, to represent American Family during the arbitration.  (Jaeger Decl. (Dkt. # 19) ¶ 1.)  The arbitrator ultimately ruled in favor of Ms. Schreib and awarded her damages.  (*See* Arb. Ruling (Dkt. # 14-17).)  Ms. Schreib then filed this action against

American Family, alleging claims for breach of contract, violations of Washington's

Insurance Fair Conduct Act ("IFCA"), RCW 48.30.010 *et seq.*, and insurance bad faith.

(*See* Compl.)  American Family now moves for an order protecting it from certain of Ms.

Schreib's discovery requests.

## III.   ANALYSIS

### A.   Standard for Protective Orders

"Parties may obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  For purposes of discovery,

relevant information is that which is "reasonably calculated to lead to the discovery of

admissible evidence."  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th

Cir. 1992).  Discovery, however, is not unlimited; "like all matters of procedure, [it] has

ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340,

351 (1978).  Accordingly, the court must limit the scope of discovery otherwise

allowable under the federal rules if it determines that "the burden or expense of the

proposed discovery outweighs its likely benefit, considering the needs of the case, the

amount in controversy, the parties' resources, the importance of the issues at stake in the

action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P.

26(b)(2)(C)(iii).

Specifically, on motion for a protective order, the court "may, for good cause,

issue an order to protect a party or person from annoyance, embarrassment, oppression,

or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Options available to the court

include, among others, "forbidding the disclosure or discovery; . . . [and] forbidding

1   inquiry into certain matters, or limiting the scope of disclosure or discovery to certain

2   matters." *Id.*  District courts are vested with broad discretion in determining whether a

3   protective order is appropriate and, if so, what degree of protection is warranted.  *Seattle*

4   *Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips ex rel. Estate of Byrd v. Gen.*

5   *Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002).  The party seeking to limit

6   discovery has the burden of proving "good cause," which requires a showing "that

7   specific prejudice or harm will result" if the protective order is not granted.  *In re Roman*

8   *Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011).

9   **B.     Mr. Jaeger's Litigation File**

10          American Family objects to Ms. Schreib's request for disclosure of the "complete

11   legal files" of Mr. Jaeger.  (1st Mot.; Resp. (Dkt. # 36) at 2.)  Although American Family

12   has disclosed some of Mr. Jaeger's documents, it contends that the remaining documents

13   fall within the work product doctrine or attorney client privilege.  (*See* Privilege Log

14   (Dkt. # 37-8).)  For her part, Ms. Schreib maintains that the work product doctrine and

15   attorney client privilege are inapplicable to Mr. Jaeger under *Cedell v. Farmers Insurance*

16   *Company of Washington*, 295 P.3d 239 (Wash. 2013).  Ms. Schreib's position is not well

17   taken.

18          First, because the work product doctrine is a procedural immunity governed by the

19   Federal Rules of Civil Procedure, under the *Erie* doctrine, state law cannot be invoked to

20   avoid application of that rule in a diversity case.  *MKB Constructors v. Am. Zurich Ins.*

21   *Co.*, No. C13-0611JLR, 2014 WL 2526901, at *8 (W.D. Wash. May 27, 2014) (quoting

22   Fed. R. Civ. P. 26(b)(3);  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and *Hanna v.*

1  *Plumer,* 380 U.S. 460, 470 (1965).)  As such, *Cedell* is inapplicable to American

2  Family's assertion of work product protection.[1]  (*See id.*)  The portion of Mr. Jaeger's

3  legal file that falls within the federal definition of work product is not discoverable.

4      Second, *Cedell*'s presumption that there is no attorney client privilege in bad faith

5  insurance actions does not apply in the context of first party UIM claims.  *See Cedell*, 295

6  P.3d at 247 ("[I]n first party UIM claims, there is no presumption of waiver by the insurer

7  of the attorney-client privilege . . . .")  Rather, to obtain privileged documents in a case

8  involving a first party UIM claim, an insured must show that the insurer's bad faith in

9  denying the claim was "tantamount to civil fraud."  (*Id.*)  Although *Cedell* did not address

10  the standard for showing bad faith tantamount to civil fraud, it cited the approach used in

11  *Barry v. USAA*, 989 P.2d 1172 (Wash. Ct. App. 1999) approvingly.  *Barry* makes clear

12  that allegations of bad faith claims handling alone, even where sufficiently supported by

13  the record to establish a prima facie case, do not rise to the level of civil fraud.  *Barry,*

14  989 P.2d at 1176-77.  Rather, something over and above a typical claim of bad faith is

15  required.  *Id.*; *see also MKB Constructors*, 2014 WL 2526901, at * 5.

16      Here, Ms. Schreib's action is predicated on American Family's assessment of her

17  UIM claim.  (*See* Compl.)  As such, the *Cedell* presumption that the attorney client

18  privilege is waived is inapplicable.  *See Cedell*, 295 P.3d at 247.  Ms. Schreib, however,

19  makes no effort to show that American Family has engaged in bad faith tantamount to

20  

---

21  [1]Similarly, because federal law governs  the procedural aspects of this case, *Cedell*'s instructions as to the procedures state courts should follow when evaluating insurance companies' assertions of attorney client privilege and work product protection (namely, a series of in camera reviews) are not

22  binding on this court.  *See MKB Constructors*, 2014 WL 2526901, at *6-7.

civil fraud.  Instead, Ms. Schreib flatly asserts, without supporting evidence, that "[b]ased on its own claims records produced, plaintiff has sufficiently made a preliminary showing of bad faith tantamount to civil fraud by American Family in failing to thoroughly investigation [sic] and evaluate plaintiff's underlying PIP and UIM claims." (Resp. at 18.)  Yet she provides no argument or explanation as to why American Family's practices with respect to her UIM claim transcend ordinary bad faith such that they are tantamount to civil fraud.  (*See id.*)  Under *Barry*, merely resting on allegations of bad faith is insufficient to pierce the attorney client privilege.  *See* 989 P.2d at 1176-77. Consequently, the portions of Mr. Jaeger's files that fall within the attorney client privilege are not discoverable.

Third, to the extent (if any) that *Cedell* applies in the UIM context, it merely establishes the presumption that, in actions for insurance bad faith, "that there is no attorney-client privilege relevant between the insured and the insurer in the *claims adjusting process*."  *Cedell*, 295 P.3d at 246 (emphasis added).  As such, an insured is presumptively entitled to discovery of the insurer's "entire claims file"—including documents created by the insurer's attorneys—unless the insurer can show that the attorneys in question were "not engaged in the quasi-fiduciary tasks of investigating and evaluating the claim."  *Id.* at 247.  Once the insurer rebuts the presumption, an insured's only recourse is to show bad faith tantamount to civil fraud.  *Id.*

Here, however, Ms. Schreib demands production of Mr. Jaeger's litigation file— not American Family's claims file.  (*See* 1st Mot.; Resp.)  Mr. Jaeger is not in-house counsel to American Family; rather, he is a member of an independent law firm that was

1   retained to defend American Family against Ms. Schreib's UIM claim in arbitration.

2   (Jaeger Decl. ¶ 1.)  In fact, Mr. Jaeger was not retained to work on the matter until *after*

3   Ms. Schreib requested binding arbitration on her UIM claim in December, 2012.  (1st

4   Mot. at 6; *see also* Privilege Log at 3 (12/14/14 entry reflecting transmittal of matter from

5   American Family to Mr. Jaeger).)  There is no indication that the Washington Supreme

6   Court intended *Cedell* to apply to independent litigation counsel hired to defend an

7   insured against a bad faith claim.

8         Even if *Cedell* did apply, American Family has carried its burden to show that Mr.

9   Jaeger was not engaged in the tasks of investigating or evaluating Ms. Schreib's claim.

10  By the time Mr. Jaeger was engaged, the claims adjustment process had been ongoing for

11  over a year, and had culminated in American Family's June, 2012, conclusion that Ms.

12  Schreib was not entitled to compensation beyond her PIP limits.  (*See* 8/25/14 Order at 2-

13  6; Am. Fam. 6/9/12 Letter.)  A review of Mr. Jaeger's privilege log shows that the

14  withheld documents reflect litigation strategy, tactics, and planning for the upcoming

15  arbitration—there is no indication that Mr. Jaeger personally contacted Ms. Schreib or

16  otherwise engaged in investigating the facts of Ms. Schreib's claims.  (*See generally*

17  Privilege Log.)  Because there is no indication that Mr. Jaeger was involved in the claims

18  adjusting process, *Cedell*'s presumption of discoverability, to the extent it ever applied, is

19  rebutted.  *See Cedell*, 295 P.3d at 274.  And, as shown above, Ms. Schreib is unable to

20  make a showing that the civil fraud exception is applicable.

21        For all of these reasons, Ms. Schreib's argument that *Cedell* requires disclosure of

22  Mr. Jaeger's entire legal files must fail.  Accordingly, the court GRANTS American

1  Family's motion for a protective order.  American Family is not required to produce

2  documents from Mr. Jaeger's legal files that are legitimately entitled to the work product

3  or attorney client privilege protection.  For these same reasons, Ms. Schreib is not

4  permitted to depose Mr. Jaeger.

5  **C.    IFCA Notices and Complaints**

6        American Family also objects to Ms. Schrieb's Requests for Production Nos. 4

7  and 10, which request any and all IFCA notices and complaints alleging IFCA or bad

8  faith claims filed against American Family in the last three years.  (*See* RFPs (Dkt # 37-

9  7).)  Ms. Schreib alleges that these discovery requests are appropriate because "American

10 Family's claims handling and practices are at issue" in this case.  (Resp. at 15.)  To the

11 contrary, the only issue in this case is American Family's handling of Ms. Schreib's UIM

12 claim—not American Family's handling of all insurance claims over the last three years.

13 American Family's historical pattern and practice of claim handling is not an element of

14 Ms. Schreib's breach of contract, IFCA, or bad faith claims.  *See* RCW 48.30.015

15 (defining an IFCA claim); *Overton v. Consol. Ins. Co.*, 145 Wash. 2d 417, 433, 38 P.3d

16 322, 329 (2002) (defining a bad faith insurance claim).  As such, this request is

17 overbroad.

18       District courts need not condone the use of discovery to engage in "fishing

19 expedition[s]."  *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004).  Ms. Schreib

20 fails to show that the information implicated by these discovery requests is of any more

21 than limited and remote relevance to this action.  But requiring American Family to

22 aggregate all complaints and notices filed against it over the last three years would

1   require a substantial amount of manpower and time.  (*See* 2d Mot. at 12); *see also*

2   *Jiminez v. City of Chi.*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010) ('The production

3   of irrelevant information is inherently unduly burdensome.")  Because the burden and

4   expense of the proposed discovery outweighs its likely benefit, the court finds that

5   American Family has shown good cause for a protective order.  *See In re Roman Catholic*

6   *Archbishop of Portland in Or.*, 661 F.3d at 424; Fed. R. Civ. P. 26(c)(1).  Accordingly,

7   the court GRANTS American Family's motion for a protective order.  Consistent with

8   the principles outlined above, American Family is not required to further respond to

9   Requests for Production Nos. 4 and 10.

10  **D.      Employee Personnel Files**

11          In addition, American Family objects to Ms. Schreib's Requests for Production

12  Nos. 13, 14, and 17, which request all audits, reviews, and evaluations of American

13  Family personnel who handled Ms. Schreib's claims, as well as all deposition transcripts,

14  court testimony, and declarations of these personnel.  (*See id*.)  Specifically, American

15  Family moves for a protective order protecting the personnel files of three claims

16  adjusters:  Bradley Lehman, Tana Stevens, and Jennifer Quiles.  (2d. Mot. at 5.)

17          Ms. Schreib fails to show that the information implicated by these requests

18   is "reasonably calculated to lead to the discovery of admissible evidence."  *Brown Bag*

19  *Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).  Ms. Schreib

20  speculates that American Family offers incentives to employees to undervalue claims, but

21  fails to provide any objective basis for this accusation, let alone any explanation of why

22  that theory needs to be resolved by access to employee personnel files.  (*See* Resp. at 14.)

ORDER- 9

1   In fact, it appears that this theory can easily be addressed by more narrowly targeted

2   discovery requests.  (*See, e.g.*, RFPs at 20 (RFP # 15 requesting all documents pertaining

3   to any incentive programs run by American Family).)  Similarly, Ms. Schreib fails to

4   explain why records from other insurance litigation would be pertinent to determining

5   whether American Family improperly denied her specific UIM claim.  Again, these

6   requests are overbroad, and courts are not required to countenance "fishing expeditions."

7   *Rivera*, 364 F.3d at 1072.

8        Moreover, the information sought by these requests—such as performance

9   evaluations and audits—is personal to the American Family employees in question, and

10  not widely known.  Disclosure may serve to embarrass, annoy, and harass these

11  employees.  Because this annoyance, embarrassment, and burden outweighs any potential

12  benefit of the proposed discovery, the court finds that American Family has shown good

13  cause for a protective order.  *See In re Roman Catholic Archbishop of Portland in Or.*,

14  661 F.3d at 424; Fed. R. Civ. P. 26(c)(1).  Accordingly, the court GRANTS American

15  Family's motion for a protective order.  American Family is not required to disclose the

16  personnel files of Bradley Lehman, Tana Stevens, and Jennifer Quiles, and, consistent

17  with the principles outlined above, is not required to further respond to Requests for

18  Production Nos. 13, 14, and 17.

19  //

20  //

21  //

22  //

ORDER- 10

1

## IV.   CONCLUSION

2          For the foregoing reasons, the court GRANTS American Family's motions for a

3 protective order (Dkt. ## 31, 34).

4          Dated this 14th day of October, 2014.

5

6

7                                                         _____

8                                                         JAMES L. ROBART
                                                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22