UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THERESA L. SCHREIB,

          Plaintiff,

       v.

AMERICAN FAMILY MUTUAL
INSURANCE CO.,

          Defendant.

CASE NO. C14-0165JLR

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
PROTECTIVE ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant American Family Mutual

Insurance Company's ("American Family") motion for a protective order. (Mot. (Dkt.

# 44).)  Having considered the submissions of the parties, the balance of the record, and

the relevant law, the court GRANTS in part and DENIES in part American Family's

motion.

//

## II.    BACKGROUND

This case arises in the aftermath of an insurance dispute between Plaintiff Theresa Schreib and American Family.  Ms. Schreib was involved in an uncontested liability automobile collision in April 2009.  (Compl. (Dkt # 3) ¶ 2.1.)  Ms. Schreib alleges that she suffered several injuries as a result of this collision.  (*Id.* ¶ 2.5.)  At the time, Ms. Schreib held an automobile insurance policy from American Family that included underinsured motorist ("UIM") coverage.  (Policy (Dkt. # 20-19).)  Ms. Schreib submitted a claim to American Family for UIM benefits in the spring of 2011.  (*See* Am. Fam. 5/3/11 Letter (Dkt. # 20-1).)  Over a year passed, during which the parties investigated the claim and exchanged correspondence.  (*See generally* 8/25/14 Order (Dkt. # 24) at 2-6 (describing the parties' claims adjustment process).)  In June 2012, American Family informed Ms. Schreib that it would not offer her any further compensation for her injuries because it found that she had already been fully compensated by the combination of her settlement with the tortfeasor's insurance company and American Family's waiver of its personal injury protection ("PIP") subrogation claim.  (*See* Am. Fam. 6/9/12 Letter (Dkt. # 20-12).)

Ms. Schreib was dissatisfied with this response.  On September 7, 2012, Ms. Schreib served American Family with a Notice of Claim Under Insurance Fair Conduct Act, ("IFCA"), RCW 48.30.010 *et seq.*  (IFCA Notice (Dkt. # 14-15).)  On December 14, 2012, Ms. Schreib requested that her claim be submitted to binding arbitration pursuant to the terms of the policy.  (Davis 12/14/12 Letter (Dkt. # 14-16).)  American Family retained Michael Jaeger, of an independent law firm, to represent American Family

1   during the arbitration.  (Jaeger Decl. (Dkt. # 19) ¶ 1.)  The arbitrator ultimately ruled in

2   favor of Ms. Schreib and awarded her damages.  (*See* Arb. Ruling (Dkt. # 14-17).)  Ms.

3   Schreib then filed this action against American Family, alleging claims for breach of

4   contract, violations of IFCA, and insurance bad faith.  (*See* Compl.)  American Family

5   now moves for an order protecting it from having to disclose certain loss reserve

6   documents.  (*See* Mot. at 3, 10.)  It also moves to limit the scope of or strike a series of

7   Federal Rule of Civil Procedure 30(b)(6) deposition topics noticed by Ms. Schreib.  (*See*

8   *id.* at 3-4, 10-12; Am. 30(b)(6) Notice (Dkt. # 50-2).)

9                    **III.    ANALYSIS**

10  **A.    Standard for Protective Orders**

11          "Parties may obtain discovery regarding any nonprivileged matter that is relevant

12  to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  For purposes of discovery,

13  relevant information is that which is "reasonably calculated to lead to the discovery of

14  admissible evidence."  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th

15  Cir. 1992) (quoting Fed. R. Civ. P. 26(b)(1)).  Discovery, however, is not unlimited; "like

16  all matters of procedure, [it] has ultimate and necessary boundaries."  *Oppenheimer*

17  *Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Accordingly, the court must limit the

18  scope of discovery otherwise allowable under the federal Rules if it determines that "the

19  burden or expense of the proposed discovery outweighs its likely benefit, considering the

20  needs of the case, the amount in controversy, the parties' resources, the importance of the

21  issues at stake in the action, and the importance of the discovery in resolving the issues."

22  Fed. R. Civ. P. 26(b)(2)(C)(iii).

ORDER- 3

1    Specifically, on motion for a protective order, the court "may, for good cause,

2    issue an order to protect a party or person from annoyance, embarrassment, oppression,

3    or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  Options available to the court

4    include, among others, "forbidding the disclosure or discovery; . . . [and] forbidding

5    inquiry into certain matters, or limiting the scope of disclosure or discovery to certain

6    matters." *Id.*  District courts are vested with broad discretion in determining whether a

7    protective order is appropriate and, if so, what degree of protection is warranted. *Seattle*

8    *Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also Phillips ex rel. Estate of Byrd v.*

9    *Gen. Motors Corp.*, 307 F.3d 1206, 1211-12 (9th Cir. 2002).  The party seeking to limit

10   discovery has the burden of proving "good cause," which requires a showing "that

11   specific prejudice or harm will result" if the protective order is not granted. *In re Roman*

12   *Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (citing

13   *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

14   **B.    Request for Production of Loss Reserve Documents**

15    American Family objects to Ms. Schreib's request for production of "all

16   documents . . . related to reserves set or recommended to be set at any time prior to the

17   conclusion of [Ms. Schreib's] UIM arbitration . . . ." (Mot. at 3 (quoting Schreib 2d RFP

18   (Dkt. # 42-4) at 3).)  Although American Family has produced some reserve information

19   from Ms. Schreib's claims file (Mot. at 3.), it contends that any loss reserve documents

20   created after it began anticipating litigation are protected by the work product doctrine or

21   attorney-client privilege.  (*See id.*; 2d Am. Privilege Log (Dkt. # 45-3).)  Ms. Schreib

22   argues that the work product doctrine does not apply to loss reserve information,

1    regardless of when it was created, because maintenance of loss reserves is mandated by

2    statute.  (*See* Resp. (Dkt. # 49) at 10.)  She thus concludes that loss reserve information

3    cannot be created in anticipation of litigation or protected by the work product doctrine.

4    (*See id.*)  The court disagrees.

5        First, Ms. Schreib's argument regarding the documents' relevance is unpersuasive

6    because it conflates the issues of relevance and privilege.  Courts are split as to whether

7    loss reserve information is relevant in bad faith claims against insurance companies.

8    *Compare Isilon Sys., Inc. v. Twin City Fire Ins. Co.*, No. C10-1392MJP, 2012 WL

9    503852, at *2 (W.D. Wash. Feb. 15, 2012) ("[I]nsurance reserves are generally relevant

10   in a bad faith case against insurance companies.") *and Flintkote Co. v. Gen. Acc. Assur.*

11   *Co. of Canada*, No. C 04-01827 MHP, 2009 WL 1457974, at *5 (N.D. Cal. May 26,

12   2009) (finding reserve information relevant to plaintiff's bad faith claim against its

13   insurer) *with Heights at Issaquah Ridge Owners Ass'n v. Steadfast Ins. Co.*, No. C07-

14   1045RSM, 2007 WL 4410260, at *2-4 (W.D. Wash. Dec. 13, 2007) (finding that

15   information on loss reserves was not relevant to a bad faith claim) *and Am. Prot. Ins. Co.*

16   *v. Helm Concentrates, Inc.*, 140 F.R.D. 448, 450 (E.D. Cal. 1991) (finding that loss

17   information was not relevant to a first party bad faith insurance claim).  The court agrees

18   with Ms. Schrieb that loss reserve information regarding a specific insurance claim may

19   be relevant in bad faith insurance cases.  *See Isilon Sys.*, 2012 WL 503852, at *2;

20   *Flintkote Co.*, WL 1457974, at *5.  Even relevant information, however, is not

21   discoverable where it is protected by the attorney-client privilege or the work product

22   doctrine.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any

1    nonprivileged matter that is relevant to any party's claim or defense . . . .").  Thus, Ms.

2    Schreib's argument in favor of relevance fails to overcome American Family's assertion

3    that the undisclosed loss reserve information is privileged.  *See id.*

4         Second, the court agrees with American Family that reserve information that was

5    created in anticipation of litigation is protected by the work product doctrine.  (*See* Mot.

6    at 10.)  Because federal jurisdiction in this case is based on diversity, Washington law

7    applies to claims of attorney-client privilege, while federal law governs assertions of

8    work product protection.  *See Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 666 (W.D.

9    Wash. 2007).  The work product doctrine protects from discovery documents and

10   tangible things prepared by a party or a party's representative in anticipation of litigation.

11   Fed. R. Civ. P. 26(b)(3); *Admiralty Ins. Co. v. U.S. Dist. Court for Dist. Ariz.*, 881 F.2d

12   1486, 1494 (9th Cir. 1989).

13        To qualify for work-product protection, documents must:  (1) be "prepared in

14   anticipation of litigation or for trial," and (2) be prepared "by or for another party or by or

15   for that other party's representative."  *United States v. Richey*, 632 F.3d 559, 567 (9th

16   Cir. 2011) (quoting *In re Grand Jury Subpoena (Mark Torf)*, 357 F.3d 900, 907 (9th Cir.

17   2004)).  In circumstances where a document serves a dual purpose, that is, where it was

18   not prepared exclusively for litigation, the Ninth Circuit applies the "because of" test.  *Id.*

19   Under this test, dual purpose documents are deemed prepared because of litigation if "in

20   light of the nature of the document and the factual situation in the particular case, the

21   document can be fairly said to have been prepared or obtained because of the prospect of

22   litigation."  *Id.* (quoting *In re Grand Jury Subpoena*, 357 F.3d at 907).  In applying the

ORDER- 6

1 "because of" standard, courts must consider the totality of the circumstances and

2 determine whether the "document was created because of anticipated litigation, and

3 would not have been created in substantially similar form but for the prospect of

4 litigation." *Id.* (quoting *In re Grand Jury Subpoena*, 357 F.3d at 908).

5       American Family claims that documents regarding loss reserves set after

6 American Family received Ms. Schreib's IFCA notice are entitled to work product

7 protection. Provision of an IFCA notice is a statutory prerequisite to bringing an IFCA

8 claim. *See* RCW 48.30.015(8) ("Twenty days prior to filing an action based on this

9 section, a first party claimant must provide written notice of the basis for the cause of

10 action to the insurer and office of the insurance commissioner."). American Family

11 received Ms. Schreib's IFCA notice on September 7, 2012. (*See* IFCA Notice.) The

12 notice warned American Family that "litigation may be commenced soon," and that if the

13 claim was not resolved within 20 days, Ms. Schreib's "intention is to file a lawsuit

14 against [American Family] for its numerous violations of [IFCA]." (*Id.*) Based on the

15 purpose of the notice as a prerequisite to litigation and the adversarial language employed

16 in the notice, the court concludes that it was reasonable for American Family to anticipate

17 litigation once it received the notice. *See Johnson v. Allstate Prop. & Cas. Ins. Co.*, No.

18 C 14-5064 KLS, 2014 WL 4293967, at *5, *8 (W.D. Wash. Aug. 29, 2014) (finding that

19 documents prepared after "Plaintiffs' counsel advised he was preparing IFCA

20 documentation and planned to initiate suit against [the defendant]" were created in

21 anticipation of litigation); *see also Arfa v. Zionist Org. of Am.*, No. CV 13-2942 ABC SS,

22 2014 WL 815496, at *3 (C.D. Cal. Mar. 3, 2014).

1    That conclusion, however, does not end the inquiry.  Because insurers in

2 Washington State are required by statute to maintain loss reserves in the ordinary course

3 of business (*see* RCW 48.12.030(2), .090), loss reserve documents are "not prepared

4 exclusively for litigation."  *See Richey*, 632 F.3d at 678.  Nonetheless, in the context of

5 pending litigation, "the purpose for setting the loss reserves [goes] beyond its ordinary

6 course of investigating and handling claims and [is] a financial evaluation of the claim

7 from the standpoint of pending or anticipated litigation." *Nicholas v. Bituminous Cas.*

8 *Corp.*, 235 F.R.D. 325, 332 (N.D. W. Va. 2006); *see also Lexington Ins. Co.*, 240 F.R.D.

9 at 668 (noting that an insurer's reserve information may represent "individual case

10 reserves calculated by its attorneys") (quoting *Simon v. G.D. Searle Co.*, 816 F.2d 397

11 (8th Cir. 1987)).  American Family confirms that the reserves set after it was put on

12 notice of potential litigation by Ms. Schreib's IFCA notice included a "calculation of risk

13 predicated upon the claim being placed into suit."  (Reply (Dkt. # 51) at 4.)  Therefore,

14 documents regarding American Family's loss reserves served dual purposes, and the

15 "because of" test applies.  *See Richey*, 632 F.3d at 567.

16    The court finds that, taking into account the totality of the circumstances, the loss

17 reserve documents "can be fairly said to have been prepared or obtained because of the

18 prospect of litigation."  *Id.* (quoting *In re Grand Jury Subpoena*, 357 F.3d at 907).

19 Individual loss reserve documents created once an insurer anticipates litigation are not

20 "created in [a] substantially similar form" to those created in the absence of impending

21 litigation.  *See Richey*, 632 F.3d at 678.  The difference occurs because, once litigation is

22 anticipated, loss reserve documents by definition reflect the mental impressions,

ORDER- 8

1    thoughts, and conclusions of attorneys or employees evaluating the merits and risk of a

2    legal claim.   *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987)

3    ("Although the risk management documents were not themselves prepared in anticipation

4    of litigation, they may be protected from discovery to the extent that they disclose the

5    individual case reserves calculated by [the insurer's] attorneys. The individual case

6    reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in

7    evaluating a legal claim.").

8         As such, the court concludes that the work product doctrine protects the loss

9    reserve documents that American Family created after receipt of the IFCA notice that

10   reflect evaluations of the potentially impending litigation.   *See Isilon Sys., Inc.*, 2012 WL

11   503852, at *3 (holding that "individual case reserves calculated by defendant's attorneys

12   may constitute work product") (citing *Lexington Ins. Co.*, 240 F.R.D. at 668); *Nicholas*,

13   235 F.R.D. at 332 (finding that loss reserve information was prepared in anticipation of

14   litigation and thus protected by work product privilege after the plaintiff's lawyer notified

15   the insurer of potential litigation).   Accordingly, the court GRANTS American Family's

16   motion for a protective order regarding loss reserves information.   American Family is

17   not required to produce loss reserve documents that are entitled to work product or

18   attorney-client privilege.[1]

19

20   _____

21   [1] The court agrees with American Family's uncontroverted position that loss reserve information
     exchanged between American Family and its attorney regarding impending litigation is protected by the
22   attorney-client privilege.  (*See* Mot. at 3.)

1  **C.    Rule 30(b)(6) Deposition Topics**

2      As explained in the following sections, the court GRANTS in part and DENIES in

3  part American Family's motion for a protective order regarding Ms. Schreib's noticed

4  Rule 30(b)(6) deposition topics.

5      1.  Topics 1-6, 9, 12 & 13

6      American Family objects to Topics 1-6, 9, 12, and 13 "to the extent that they seek

7  testimony outside the discoverable time period," namely, the date American Family

8  received Ms. Schreib's IFCA notice.  (Mot. at 4; *see also* Am. 30(b)(6) Notice ¶¶ 1-6, 9,

9  12-13.)  These topics generally concern American Family's handling and evaluation of

10  Ms. Schreib's UIM claim.  (*See, e.g.*, Am. 30(b)(6) Notice ¶ 2 (seeking testimony

11  regarding "American Family's evaluation of plaintiff's UIM claim from April 2, 2009 to

12  September 25, 2013.").)

13      Ms. Schreib argues that insurers are required by law to maintain a claim file and to

14  continue handling and documenting claims "regardless of litigation or the threat of

15  litigation."  (Resp. at 9.)  She further argues that anticipation of potential litigation does

16  not automatically convert claims handling information into privileged claims handling

17  information.  (*Id.* at 2.)  While the court disagrees with Ms. Schreib's reasoning,[2] she is

18

19  ────────────────

[2] The court is not persuaded by Ms. Schreib's arguments that the contents of her claim file cannot

20  be considered work product because:  (1) American Family is required by statute to maintain her claim
file (*see* Resp. at 6-7); (2) the IFCA notice did not relieve American Family of its good faith duty to
continue documenting her claim (*id.* at 7-8); and (3) contractually required arbitration did not relieve

21  American Family of its good faith duty to continue documenting her claim (*id.* at 8-10).  Ms. Schreib
provides no authority to support her position that the statutory requirements applicable to insurers in
Washington State circumvent the work product doctrine as a general matter.  (*See id.*)  Absent persuasive

22  authority, the court declines to adopt such a position.

1  correct in concluding that her IFCA notice did not create "a discovery black box into

2  which [all] information regarding an insurer's claims handling converts to protected work

3  product."  (*Id.* at 8.)

4      In the context of Rule 30(b)(6) depositions, the work product doctrine operates in

5  a "very limited way . . . to circumscribe the scope of depositions upon oral examination."

6  *Taylor v. Shaw*, No. 2:04CV01668LDGLRL, 2007 WL 710186, at *3 (D. Nev. Mar. 7,

7  2007) (quoting *Hydramar, Inc. v. General Dynamics Corp.*, 119 F.R.D. 367, 372 (E.D.

8  Pa. 1988)).  Specifically, it protects against "questions which improperly tend to elicit the

9  mental impressions of the parties' attorneys."  *Id.* (citing *Protective Nat'l Ins. Co. of*

10 *Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 279 (D. Neb. 1989)).  Facts enjoy far

11 less protection under the work product doctrine regardless of when they were discovered.

12     [C]ourts have consistently held that the work product doctrine furnishes no
   shield against discovery, by interrogatories or by deposition, of the facts
13 that the adverse party's lawyer has learned, or the person from whom he has
   learned such facts, or the existence or nonexistence of documents, even
14 though the documents themselves may not be subject to discovery.

15 *Pastrana v. Local 9509, Commc'ns Workers of Am.*, *AFL-CIO*, No. CIV. 06CV1779 W

16 AJB, 2007 WL 2900477, at *5 (S.D. Cal. Sept. 28, 2007) (citing *Protective Nat'l Ins. Co.*

17 *of Omaha*, 137 F.R.D. at 281 and 8 Charles Alan Wright & Arthur R. Miller, *Federal*

18 *Practice & Procedure* § 2023 (1970)).

19     Here, the work product doctrine applies to the disputed Rule 30(b)(6) topics only

20 to the extent that Ms. Schreib's questions would require the deponent to divulge "mental

21 impressions, conclusions, opinions or legal theories" that American Family's attorneys or

22 agents formed after American Family received Ms. Schreib's IFCA notice.  *See* Fed. R.

Civ. P. 26(b)(3)(B); *see also Taylor*, 2007 WL 710186, at *3. Ms. Schreib's counsel may

question American Family's deponent regarding relevant facts, but the deponent is not

required to divulge opinion work product created after the time American Family

received the IFCA notice and began anticipating litigation. *See Pastrana*, 2007 WL

2900477, at *4-5.

   2. Topic 8

   American Family asks the court to strike Topic 8 because it is completely

precluded by the attorney-client privilege and work product doctrine. (*See* Mot. at 10.)

The full text of Topic 8 is as follows:

> Why American Family (as distinct from any lawyer hired by American
> Family) did not provide the deposition transcripts (of depositions taken
> May 15, 2013) of plaintiff's former co-workers, supervisors and/or
> managers to American Family's medical and non-medical experts before
> the September 25, 2013 arbitration.

(Am. 30(b)(6) Notice ¶ 8.)

   Mr. Jaeger, the outside counsel whom American Family retained to defend the

UIM arbitration, testifies that he did not provide Ms. Schreib's co-workers' depositions to

American Family's litigation experts because it is his standard practice not to provide lay

witness deposition transcripts to medical experts. (Jaeger Decl. ¶¶ 2, 9.) American

Family, therefore, argues that Topic 8 must be struck because "[t]estimony regarding the

use of discovery conducted under the direction of independent legal counsel's defense

entails litigations strategy which is protected by privilege." (Reply at 6.) The court

agrees in part.

1    Topic 8, as worded, encompasses information regarding American Family's legal

2    strategy as established by Mr. Jaeger.  The work product doctrine protects against

3    "questions [to the deponent] which improperly tend to elicit the mental impressions of the

4    parties' attorneys."  *Taylor*, 2007 WL 710186, at *3 (citing *Protective Nat'l Ins. Co. of

5    Omaha*, 137 F.R.D. at 279).  As such, Ms. Schreib may not elicit testimony under this

6    topic that would require the deponent to divulge legal opinions or strategy formed by

7    American Family's attorneys or agents after American Family began anticipating

8    litigation on September 7, 2012.  *See Taylor*, WL 710186, at *3.  Ms. Schreib's counsel

9    may, however, pose fact-based questions on the broader subject of the lay witness

10   depositions that do not require the deponent to divulge privileged information.

11        3.  Topic 10

12        American Family asks the court to strike 30(b)(6) Topic 10[3]  because it is

13   overbroad, burdensome, and "amounts to a request for personnel files."  (Mot. at 11.)

14   The court disagrees.  The court previously ruled that American Family was not required

15   to produce the personnel files of three American Family claims adjusters.  (*See* 10/14/14

16   Ord. (Dkt. # 41) at 9-10.)  The court found that the annoyance, embarrassment, and

17

18   _____

19   [3] The full text of Topic 10 is as follows:

20   American Family's criticism, if any, and/or evaluation, if any, of any American Family
     employee's (as distinct from any lawyer hired by American Family) handling of and/or
21   evaluation of and/or investigation into the plaintiff's UIM claim at any point before the
     arbitrator's decision on October 17, 2013.

22   (Am. 30(b)(6) Notice ¶ 10.)

1   burden to the adjusters of such an overbroad invasion to their privacy outweighed any

2   potential benefit.  *Id.*; *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii).

3          Here, however, Ms. Schreib has narrowed the scope of her inquiry.  (*See* Am.

4   30(b)(6) Notice ¶ 10.)  Instead of requesting the entire personnel files of the employees

5   who adjusted her claim, Ms. Schreib seeks to elicit testimony specific to those

6   employees' handling of her UIM claim and American Family's critiques or evaluations

7   thereof.  (*See id.*)  The court finds that the relevance of such testimony to Ms. Schreib's

8   claims against American Family outweighs any burden or embarrassment to American

9   Family and its employees.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).  For those reasons,

10  American Family has failed to show good cause for a protective order as to Topic 10.

11  *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 424; Fed. R. Civ. P.

12  26(c)(1).

13                          **IV.    CONCLUSION**

14         For the foregoing reasons, the court GRANTS in part and DENIES in part

15  American Family's motion for a protective order (Dkt. # 44).

16         Dated this 15th day of December.

17

18

19  _____

20  JAMES L. ROBART
    United States District Judge

21

22

ORDER- 14