1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

THERESA L. SCHREIB,

CASE NO. C14-0165JLR

11

Plaintiff,

ORDER GRANTING
DEFENDANT PARTIAL
SUMMARY JUDGMENT

12

v.

13

AMERICAN FAMILY MUTUAL
INSURANCE CO.,

14

Defendant.

15

## I.   INTRODUCTION

16

17

This matter comes before the court on three motions for partial summary

judgment.  Defendant American Family Mutual Insurance Company ("American

18

Family") first moved for partial summary judgment on the measure of damages.

19

(Damages Mot. (Dkt. # 67).)  In her response to that motion, Plaintiff Theresa Schreib

20

cross-moved for partial summary judgment on the same issue.  (Damages Resp. (Dkt.

21

22

ORDER- 1

1 # 72).)  Finally, American Family moved for partial summary judgment on the

2 availability of *Olympic Steamship* fees.  (Olympic Mot. (Dkt. # 75).)

3     Having considered the submissions of the parties, the balance of the record, and

4 the relevant law, the court GRANTS American Family's motions for partial summary

5 judgment on the issues of damages[1] and *Olympic Steamship* fees.

6                    **II.    BACKGROUND**

7     The vast majority of facts in this case are undisputed.  Ms. Schreib was involved

8 in an uncontested liability automobile collision in April, 2009.  (Compl. (Dkt. # 3) ¶ 2.1.)

9 She alleges that, as a result of the collision, she incurred a mild traumatic brain injury, in

10 addition to neck, back, and hip injuries.  (*Id.* ¶ 2.5.)  American Family disputes the extent

11 to which Ms. Schreib's alleged injuries were caused by the collision.  (*See generally*

12 Resp. (Dkt. # 18).)

13     At the time of the collision, Ms. Schreib had an automobile insurance policy with

14 American Family.  (8/14/14 Rider Decl. (Dkt. # 20) ¶ 22, Ex. 19.)  Her policy included

15 underinsured motorist ("UIM") coverage with a policy limit of $500,000.00.  (*Id.* at 2.)

16 Ms. Schreib settled her claim with the tortfeasor for $75,000.00, the full amount covered

17 by the tortfeasor's insurance policy.  (Davis Decl. (Dkt. # 14) ¶ 4.)  American Family

18 approved her settlement.  (*Id.*)  Ms. Schreib also received $56,300.00 in personal injury

19 protection ("PIP") benefits from her policy with American Family.  (*Id.* ¶ 5.)

20

21 _____

22     [1] Because the relief requested by American Family is somewhat opaque, the court clarifies and limits this holding as articulated in the conclusion to this order.

1    In the spring of 2011, after receiving amounts totaling $131,300.00 from the

2  tortfeasor's insurance company and American Family's PIP coverage, Ms. Schreib

3  submitted a claim to American Family for UIM benefits. (8/14/14 Rider Decl. ¶ 4, Ex.

4  1.) Over the next few months, Ms. Schreib and American Family corresponded several

5  times regarding her claim for UIM benefits. (*See generally id.*) Eventually, in

6  November, 2011, American Family informed Ms. Schreib that it had determined that the

7  combination of her settlement with the tortfeasor's insurance company and the PIP

8  award, totaling $131,300.00, was sufficient to fully compensate her for the injuries

9  sustained in the collision. (*Id.* ¶ 10, Ex. 7.) Ms. Schreib contested the findings and

10  submitted a "settlement demand package" to American Family in February, 2012,

11  formally requesting payment of the $500,000.00 UIM policy limit. (Davis Decl. ¶ 15,

12  Ex. 8.)

13    Following ongoing disputes over the UIM claim, in September, 2012, Ms. Schreib

14  informed American Family that she would pursue claims under Washington's Insurance

15  Fair Conduct Act ("IFCA"), RCW 48.30.015. (Davis Decl. ¶ 25, Ex. 15.) In December,

16  2012, pursuant to her policy, Ms. Schreib requested that her claim be submitted to

17  binding arbitration. (*Id.* ¶ 26, Ex. 16.) An arbitrator heard Ms. Schreib's claim in

18  September, 2013. (*Id.* ¶ 34.) The arbitrator issued a decision on October 17, 2013, ruling

19  that Ms. Schreib incurred damages as a result of the automobile accident in the amount of

20  $1,186,988.00. (*Id.* ¶ 35, Ex. 17.) Although documentation is not contained in the record

21  before the court, the parties agree that American Family subsequently tendered the

22

ORDER- 3

1   $500,000.00 UIM policy limit to Ms. Schreib. (*See* Damages Mot. at 5; Damages Resp.

2   at 22-24.)

3       Ms. Schreib then filed this action against American Family, alleging claims for

4   breach of contract, violation of IFCA, and insurance bad faith.[2]  (*See* Compl. (Dkt. # 1).)

5   In the motions currently before the court, American Family refutes what constitutes

6   "actual damages," with specific reference to Ms. Schreib's computations under Federal

7   Rules of Civil Procedure 26(a)(1)(A)(iii). (*See* Damages Mot.; 6/11/15 Rider Decl. (Dkt.

8   # 68) ¶ 3, Ex. 1 at 6.)  American Family also seeks to bar Ms. Schreib from seeking

9   *Olympic Steamship* fees. (See *Olympic Steamship* Mot.)  Ms. Schreib opposes American

10  Family's motion regarding actual damages and cross-moves for partial summary

11  judgment on that issue. (*See* Damages Resp.)  She does not oppose American Family's

12  motion for partial summary judgment barring *Olympic Steamship* fees. (*See Olympic*

13  *Steamship* Resp.)

14

15

16      _____

17      [2] In pleadings subsequent to her complaint, Ms. Schreib makes reference to a fourth cause
    of action:  violation of Washington's Consumer Protection Act ("CPA"), RCW 19.86.010 *et seq.*
18  (*See, e.g.*, Damages Resp. at 8, 17; *Olympic Steamship* Resp. (Dkt. # 80) at 3-4.)  Although the
    operative complaint does not cite to the CPA, it is clear that American Family has received "fair
    notice" of the claim.  *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (citing *Bell Atl.*
19  *Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007)); *Self-Directed Placement Corp. v. Control Data
    Corp.*, 908 F.2d 462, 466 (9th Cir. 1990).  Moreover, the requirement of a "short and plain
20  statement of the claim showing that the pleader is entitled to relief" is satisfied due to the factual
    overlap between Ms. Schreib's IFCA claim and her CPA claim. Fed. R. Civ. P. 8(a)(2).  Indeed,
21  American Family expressly acknowledges the CPA claim. (*See, e.g.*, Damages Mot. at 1, 7-8,
    12; Damages Reply (Dkt. # 73) at 1-4.)  Thus, to the extent the instant motions for partial
22  summary judgment address Ms. Schreib's implicit CPA claim, the court deems it proper at this
    stage.

ORDER- 4

# III.   ANALYSIS

## A.   Summary Judgment Standard

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets its burden, the burden shifts to the non-moving party to "make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Because the court grants both of American Family's motions for partial summary judgment, the analysis herein views all facts and draws all reasonable inferences in the light most favorable to Ms. Schreib.

## B.   The Proper Measure of "Actual Damages"

American Family's first motion for partial summary judgment seeks to limit the amount and type of damages that are deemed "actual damages" under any of Ms. Schreib's extra-contractual theories of recovery—namely, Ms. Schreib's IFCA claim, her CPA claim, and her tort claim of insurer bad faith.  (Damages Mot. at 1.)

1    IFCA provides a cause of action when an insurance policy claimant is

2  "unreasonably denied a claim for coverage or payment of benefits by an insurer." RCW

3  48.30.015(1).  A prevailing party is entitled to "actual damages sustained, together with

4  the costs of the action"; these "costs of the action" specifically comprise "reasonable

5  attorneys' fees and litigation costs," RCW 48.30.015(1), including expert witness fees,

6  RCW 48.30.015(3).  In addition, the court can award enhanced damages, although the

7  total damages award is "not to exceed three times the actual damages."  RCW

8  48.30.015(2).

9    The CPA allows a plaintiff to recover when she can establish the following

10  elements:  (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce;

11  (3) public interest impact; (4) injury to the plaintiff in his or her business or property; (5)

12  causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531,

13  533 (Wash. 1986).  Similar to an IFCA claim, a prevailing party under the CPA can

14  recover "actual damages . . . together with the costs of the suit, including a reasonable

15  attorney's fee." RCW 19.86.090.  Also as under IFCA, the court can enhance damages to

16  an amount "not to exceed three times the actual damages sustained," but unlike IFCA, an

17  enhanced CPA damages award shall not exceed $25,000.00 in cases of unfair or

18  deceptive trade practices such as this. *Id.*

19    Finally, the tort of insurer bad faith follows standard tort principles—it requires

20  proving duty, breach, and damages proximately caused by the breach. *See Smith v.*

21  *Safeco Ins. Co.*, 78 P.3d 1274, 1277 (2003).  An insurer typically owes a heightened duty

22  to "give equal consideration to the insured's interests and its own interests." *Liberty Int'l*

1   *Underwriters v. Carlson*, 2006 WL 623785, at *9 (W.D. Wash. Mar. 13, 2006) (citing

2   *Am. States Ins. Co. v. Symes of Silverdale, Inc.*, 78 P.3d 1266, 1270 (Wash. 2003)). This

3   enhanced duty does not exist in a UIM case, in which the insurer often stands in the shoes

4   of the tortfeasor, can assert any defense to liability that the tortfeasor had, and thus finds

5   itself in an adversarial relationship with its own insured. *See Ellwein v. Hartford Acc. &*

6   *Indem. Co.*, 15 P.3d 640, 647 (Wash. 2001), *overruled in part on other grounds, Smith v.*

7   *Safeco Ins. Co.*, 78 P.3d 1274 (Wash. 2003).  However, an insurer's duty of good faith

8   does not simply disappear—in UIM cases, the insurer still owes the insured a duty of

9   good faith and fair dealing. *Id.*  In a UIM case, an insurer must "deal in good faith and

10  fairly as to the terms of the policy and not overreach the insured, despite its adversary

11  interest." *Id.* (quoting *Hendren v. Allstate Ins. Co.*, 672 P.2d 1137, 1141 (N.M. Ct. App.

12  1983)).  To demonstrate bad faith, an insured must show the denial of benefits was

13  "unreasonable, frivolous, or unfounded," as opposed to simply incorrect. *Kirk v. Mt. Airy*

14  *Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998) (en banc); *see also Kim v. Allstate Ins. Co.*,

15  223 P.3d 1180, 1189 n.3 (Wash. Ct. App. 2009) (applying the "unreasonable, frivolous,

16  or unfounded" requirement from *Kirk* to a claim for insurance bad faith under UIM

17  coverage).  In some instances, once the insured shows that breach of duty, Washington

18  courts apply a rebuttable presumption of harm. *Kirk*, 951 P.2d at 1127.  However, in first

19  party insurance cases such as Ms. Schreib's, no such presumption applies. *See Coventry*

20  *Assoc. v. Am. States Ins. Co.*, 961 P.2d 933, 940 (Wash. 1998) (en banc).  Ms. Schreib

21  must therefore prove causation, and the appropriate measure of damages is "the amounts

22  [she] has incurred as a result of the bad faith . . . as well as general tort damages." *Id.*

1    In sum, all three extra-contractual causes of action that Ms. Schreib puts forward

2 require defining and calculating actual damages proximately caused by the breach of duty

3 or the statutory violation; IFCA and the CPA also reference actual damages to calculate

4 the maximum amount of enhanced damages.  Under all three claims, demonstrating a

5 causal link between the statutory violation or breach and the actual damages incurred is a

6 necessary element of recovery.  In her mandatory disclosures under Rule 26(a)(1)(iii),

7 Ms. Schreib claims six types of actual damages, among them "the UIM arbitration award

8 of $1,186,988.00 entered on October 17, 2013," "emotional distress damages," and

9 "litigation costs totaling $51,316.21 incurred as a result of American Family's

10 unreasonable conduct and/or compelling the plaintiff into a UIM arbitration."  (6/11/15

11 Rider Decl. ¶ 3, Ex. 1 at 6.)  She does not specify which damages she seeks under which

12 claims.  (*See id.*)

13    The first of American Family's two motions for summary judgment seeks judicial

14 determination that the $1,186,988.00 awarded at arbitration is not "the proper measure of

15 'actual damages'" for purposes of IFCA, the CPA, and the tort of insurance bad faith.

16 (Damages Mot. at 5-6.)  It also seeks summary judgment that emotional distress damages

17 are not properly considered "actual damages" under IFCA.  (*Id.* at 19.)  And finally,

18 American Family seeks summary judgment that Ms. Schreib's attorneys' fees and other

19 litigation costs are not "actual damages" for purposes of IFCA and the CPA.  (*Id.* at 20.)

20 The court concludes that none of the three are properly considered "actual damages"

21

22

1 under the causes of action identified, and accordingly grants American Family's motion

2 for partial summary judgment as to damages.[3]

3     1.  <u>The Arbitration Award</u>

4     On October 17, 2013, after Ms. Schreib pursued binding arbitration pursuant to

5 her contract with American Family, an arbitrator issued a binding ruling awarding Ms.

6 Schreib $1,186,988.00.  (Davis Decl. ¶ 35, Ex. 17 (hereinafter, Arb. Decision) at 5.)  This

7 compensated her for loss of income and earning capacity, past medical expenses, services

8 provided, and future pain and suffering caused by the automobile accident.  (*Id.* at 2-5.)

9 Importantly, the decision was made "without regard, or consideration given, to amounts

10 paid, policy limits, etc."  (*Id.* at 5.)  To satisfy its contractual obligation pursuant to the

11 arbitration decision, American Family tendered the $500,000.00 UIM policy limits to Ms.

12 Schreib.  (Damages Resp. at 22-24.)  Nonetheless, Ms. Schreib alleges that the

13 $1,186,988.00 arbitration decision is one of the six "actual damages" suffered, and she

14 seeks to recover accordingly.  (6/11/15 Rider Decl. ¶ 3, Ex. 1 at 6.)

15     *a.  Under the Insurance Fair Conduct Act*

16     The parties spend the majority of their briefs disputing the meaning of actual

17 damages.  IFCA does not define "actual damages."  *See generally* RCW 48.30.015.  In

18 the context of other statutes, the Washington Supreme Court has defined actual damages

19 to "encompass all the elements of compensatory awards generally."  *Rasor v. Retail*

20 

---

21    [3] Ms. Schreib cross-moved for partial summary judgment on the same issues as those discussed herein.  (Damages Resp.)  In light of the court's analysis and conclusions, and because

22 Schreib's cross-motion directly opposes American Family's, the court concludes that summary judgment is not appropriate with respect to her motion.

ORDER- 9

1   *Credit Co.*, 554 P.2d 1041, 1050 (Wash. 1976) (interpreting the Fair Credit Reporting

2   Act); *see also Martini v. Boeing Co.*, 971 P.2d 45, 50 (Wash. 1999) (citing Black's Law

3   Dictionary 35 (6th ed. 1990)) (interpreting the Washington Law Against Discrimination).

4   Black's Law Dictionary currently defines actual damages as "[a]n amount awarded to a

5   complainant to compensate for a proven injury or loss; damages that repay actual losses."

6   Black's Law Dictionary 471 (10th ed. 2014) (recognizing compensatory damages,

7   tangible damages, and real damages as synonymous with actual damages).

8          Notwithstanding the parties' dispute over the proper definition of actual damages,

9   a flawed understanding—or outright omission—of proximate causation analysis is the

10   dispositive issue underlying Ms. Schreib's effort to count the arbitration award as an

11   actual damage.  Under IFCA, an insurer "is liable only for those damages proximately

12   caused by [its] IFCA violation." *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1312

13   (W.D. Wash. 2013).  As part of the damages proximately caused by the IFCA violation,

14   an insured can recover policy benefits that were unreasonably denied, subject to the

15   policy's limits and other applicable terms and conditions. *Id.* at 1312-13 (citing *Tavakoli*

16   *v. Allstate Prop. & Cas. Ins. Co.*, No. C11-1587RAJ, 2012 WL 6677766, at *9 (W.D.

17   Wash. Dec. 21, 2012)).  Thus, IFCA damages might include—but are not limited to—

18   "medical bills, lost wages, and pain and suffering damages" incurred as a result of the

19   underlying automobile accident, but only to the extent those items could have been

20

21

22

ORDER- 10

1   recovered under the UIM policy and were unreasonably denied.[4]  *Id.*  However, the

2   arbitrator in this case made a "determination of the total damages suffered by Ms. Schreib

3   which were proximately caused by the *automobile accident of April 2, 2009*," without

4   regard to policy limits.  (Arb. Decision at 5 (emphasis added).)  Thus, the arbitration

5   award is an estimation of the damages caused by the accident itself, not those caused by

6   American Family's alleged unreasonable denial of IFCA benefits.  (*Id.*)

7          One can imagine scenarios in which an IFCA violation causes the entirety of an

8   insured's injuries.  In that case, an arbitrator's determination of total damages is relevant

9   to determining actual damages proximately caused by the violation.  However, the

10  arbitrator did not determine that all of Ms. Schreib's injuries were caused by an

11  unreasonable denial of benefits, nor could Ms. Schreib seriously contend as much;

12  instead, she apparently seeks to circumvent the relevant causation analysis based on

13  IFCA's purported legislative intent to "protect[] insureds and mak[e] insurers honor their

14  commitments to act fairly towards their insureds and pay claims promptly."  (Damages

15  Resp. at 10.)  The statute's plain language, which provides for treble actual damages,

16  attorneys' fees, and litigation costs, accomplishes these goals without vitiating its

17  causation requirement.  *See* RCW 48.30.015(1)-(2).

18          Because the arbitration award is not a calculation of "actual damages" resulting

19  from a violation of IFCA, but rather those resulting from the underlying motor vehicle

20  _____

21      [4] *Dees* has been interpreted to find pain and suffering damages available under IFCA, *see*
     *Segura*, 319 P.3d at 107 (Fearing, J., dissenting), but its holding is not so broad.  The case holds

22  only that pain and suffering are available under IFCA when they are a part of the insured's
     unreasonably denied underlying UIM claim.  *Dees*, 933 F. Supp. at 1312-13.

1  accident, the court determines that "the arbitration award . . . is not the proper measure of

2  'actual damages'" in this case, and grants summary judgment to American Family on that

3  issue.[5]  (Damages Mot. at 5.)  However, Ms. Schreib is entitled to prove at trial that

4  American Family's alleged IFCA violation proximately caused her actual damages, and

5  will not be limited by those described in the arbitration award.[6]  *See Dees*, 933 F. Supp.

6  2d at 1313.

7                      *b.  Under the Consumer Protection Act*

8         The damages calculated in the arbitration decision are attributable to the

9  underlying motor vehicle accident, whereas the CPA requires the injury to be "causally

10  linked to the unfair or deceptive act."  *National Union Fire Ins. Co. v. Greenwich Ins.*

11  *Co.*, 2009 WL 1794041, at *5 (W.D. Wash. June 22, 2009) (citing *Hangman Ridge*, 719

12  P.2d 533).  This is analogous to IFCA's proximate cause requirement.  Because of the

13

14         [5] The court declines Ms. Schreib's request to certify the proper interpretation of IFCA's

15  actual damages provision to the Supreme Court of Washington.  *See* RCW 2.60.020.

16         [6] The court concludes that the arbitrator's decision does not represent "actual damages,"
but that does not preclude Ms. Schreib from arguing that American Family's initial denial of
distributing the $500,000.00 UIM cap—or some portion thereof—was an "actual damage."  (*See*

17  Damages Resp. at 22-23.)  Although the $500,000.00 maximum UIM payment was subsequently
paid to Ms. Schreib and is thus unavailable as recompense under RCW 48.30.015(1), she can

18  nonetheless argue that it should be considered an "actual damage" in determining, for instance,
the maximum amount of enhanced damages available under RCW 48.30.015(b).  *See Tavakoli*,

19  2012 WL 6677766, at *9 ("The actual damages sustained from an 'unreasonabl[e] deni[al]' of
benefits necessarily include (but are not necessarily limited to) the benefits that were

20  unreasonably denied.  Thus, unlike a plaintiff with a bad faith claim, an IFCA claimant can
recover policy benefits, subject only to the policy's limit."); *see also Morella v. Safeco Ins. Co.*

21  *of Ill.*, No. C12-0672RSL, 2013 WL 1562032, at *5 (W.D. Wash. Apr. 12, 2013) (identifying
this conundrum and certifying a similar question to the Washington Supreme Court; the case was

22  settled prior to determination).  Because the parties have not presented this issue, the court
declines to decide it.

1   disparity in causation analysis between the arbitration decision and the CPA, the court

2   concludes the arbitration decision is "not the proper measure of 'actual damages'" for

3   purposes of Ms. Schreib's CPA claim.  (Damages Mot. at 5.)  However, Ms. Schreib is

4   entitled to prove at trial that American Family's CPA violation proximately caused some

5   amount of damages to her business or property, and will not be limited by those damages

6   described in the award.  RCW 19.86.090; *see also Dees*, 933 F. Supp. 2d at 1310-12

7   (explaining the type of injuries considered to be to business or property under the CPA).

8         *c.  Under the Tort of Insurance Bad Faith*

9         Under a bad faith claim, the insured "has the burden of establishing that the bad

10   faith or negligence of the insurer proximately caused damage to the insured." *Zander v.*

11   *N.H. Indem. Co.*, No. C05-5154FDB, 2006 WL 2243035, at *2 (W.D. Wash. July 26,

12   2006); *see also Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003) (en banc)

13   ("Claims by insureds against their insurers for bad faith are analyzed applying the same

14   principles as any other tort: duty, breach of that duty, and damages proximately caused by

15   any breach of duty.").  Washington law distinguishes between third party claims and first

16   party claims to determine the burden imposed to prove liability.  In third party cases,

17   Washington courts presume harm has occurred if an insured can prove breach; this

18   presumption exists because it is "almost impossible" in the third party context for an

19   insured to show damages were proximately caused by the bad faith actions of the insurer.

20   *Safeco Ins. Co. of America v. Butler*, 823 P.2d 499, 504 (Wash. 1992) (en banc).

21   However, Ms. Schreib is a first party claimant, and Washington courts decline to extend

22   this presumption in the first party context, meaning she has the burden of proving harm

1  proximately caused by American Family's bad faith. *Coventry*, 961 P.2d at 938-39. The

2  arbitration decision does not do this—it evaluates what harm was proximately caused by

3  the accident itself.

4      The court concludes that the arbitration decision is "not the proper measure of

5  'actual damages'" for purposes of Ms. Schreib's insurance bad faith claim. (Damages

6  Mot. at 5.) However, Ms. Schreib is entitled to prove at trial that American Family's bad

7  faith caused her actual damages, and will not be limited by those described in the

8  arbitration award. To the extent Ms. Schreib can prove those damages, she is entitled to

9  "the amounts [she] has incurred as a result of the bad faith [act], as well as general tort

10  damages."[7] *Coventry*, 961 P.2d at 940.

11      2.  Emotional Distress Damages Under the Insurance Fair Conduct Act

12      American Family next argues that IFCA's actual damages provision does not

13  include emotional distress damages, and that it is accordingly entitled to summary

14  judgment on that issue.[8] (Damages Mot. at 19-20.) Ms. Schreib alleges such emotional

15  distress is one of the six "actual damages" suffered, and seeks to recover accordingly.

16  _____

17      [7] To be clear, Ms. Schreib is not entitled to duplicative damages. For example, if the jury
finds that American Family violated IFCA, violated the CPA, and breached its duty of good

18  faith, the jury verdict form will be structured to identify and avoid a duplicative award of
damages.

19
     [8] The parties do not dispute that emotional distress damages are unavailable under the

20  CPA. *See Wash. St. Physicians Ins. Exch. & Assn. v. Fisons Corp.*, 858 P.2d 1054, 1064 (Wash.
1993) (en banc); (Damages Resp. at 8.) It is well settled that emotional distress damages are

21  available under the tort of bad faith. *See Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029,
1035 (Wash. Ct. App. 2000) (citing *Coventry Assoc. v. Am. States Ins. Co.*, 961 P.2d 933, 939-40

22  (Wash. 1998) (en banc). The only dispute regarding emotional damages is whether they qualify
as "actual damages" under IFCA.

1    (6/11/15 Rider Decl. ¶ 3, Ex. 1 at 6.)  This appears to be an issue of first impression under

2    IFCA.[9]

3          When confronted with a question as to the availability of emotional damages

4    pursuant to a statutory violation, Washington courts look to the "language of the

5    particular statute at issue." *White River Estates v. Hiltbrunner*, 953 P.2d 796, 798 (Wash.

6    1998) (en banc).  As a general matter, the Washington Supreme Court interprets actual

7    damages to include emotional damages.  *See Rasor*, 554 P.2d at 1050 (holding that actual

8    damages include emotional damages under the Fair Credit Reporting Act); *Martini*, 971

9    P.2d at 50 (interpreting the Washington Law Against Discrimination to allow for

10   emotional damages as part of actual damages).  In some circumstances, however,

11   Washington courts have looked to the context and purpose of the statute and determined

12   that it is inappropriate to read emotional distress damages into actual damages.  *See, e.g.*,

13   *White River*, 953 P.2d at 798 (disallowing emotional distress damages for violation of the

14   Mobile Home Landlord-Tenant Act because the statute sounds in negligence rather than

15   intentional tort); *Wash. St. Physicians Ins. Exch. & Assn. v. Fisons Corp.*, 858 P.2d 1054,

16   1064-66 (Wash. 1993) (en banc) (concluding that neither the CPA nor the Product

17   Liability Act ("PLA") contemplate emotional distress damages); *Segura v. Cabrera*, 319

18   P.3d 98, 101 (Wash. Ct. App. 2014) (construing the Residential Landlord-Tenant Act to

19   exclude emotional damages as a remedy for displacement due to a condemned or

20   _____

21        [9] The court has discretion to certify this novel question of state law to the Washington
     Supreme Court.  *See* RCW 2.60.020.  However, given the court's familiarity with cases arising
22   under IFCA and the proximity of trial in this case, the court declines to exercise this discretion.
     IFCA is sufficiently clear, based on the analysis herein, to interpret it without certification.

1  unlawful property).  In light of these differing interpretations, the court concludes that

2  whether "actual damages" includes emotional damages is "subject to two or more

3  reasonable interpretations" and thus the court thus deems it ambiguous in that context.

4  *State v. McGee*, 864 P.2d 912, 914 (Wash. 1993) (en banc).

5  When a statute is ambiguous as to an issue, Washington courts look to the

6  legislative history to determine the legislative intent.  *Rest. Dev., Inc. v. Cananwill, Inc.*,

7  80 P.3d 598, 601 (Wash. 2003) (en banc).  To give meaning to an ambiguous statute, the

8  legislature must provide "clear direction." *Segura*, 319 P.3d at 100.  The parties have

9  presented only a fraction of IFCA's legislative history to the court. (*See* Moore Decl.

10  (Dkt. # 72-1) ¶ 5, Ex. 2 at 14-19.)  Ms. Schreib cites to testimony before the Washington

11  legislature mentioning emotional damages, all from the same private insurance attorney

12  residing in California with no role in drafting IFCA. (*See id.*; Damages Resp. at 16 n.12.)

13  Having reviewed the contents of the six IFCA hearings before the state legislature, the

14  court notes three such statements in the hundreds of pages of transcript, two of which Ms.

15  Schreib cited, and all of which were made by the same expert.  *See Hearing on H.B. 1491*

16  *Before the H. Comm. on Insurance, Financial Services & Consumer Protection*, 2007

17  Leg., 60th Sess. 59:18 (Wash. Feb. 1, 2007) (statement of Ken Cooley, Attorney for State

18  Farm Insurance), *reprinted in* Isaac Ruiz, LEGISLATIVE HISTORY OF WASHINGTON'S

19  INSURANCE FAIR CONDUCT ACT 67 (2014); *Hearing on S.B. 5726 Before the S. Comm.*

20  *on Insurance, Financial Services & Consumer Protection*, 2007 Leg., 60th Sess. 16:22,

21  22:3-7 (Wash. Mar. 22, 2007) (statement of Ken Cooley, Attorney for State Farm

22  Insurance), *reprinted in* Ruiz, *supra*, at 244, 250.  The court finds no other reference to

1   the availability of emotional damages in the hearing transcripts or the House and Senate

2   Reports accessible via online database.  Put simply, these stray statements do not

3   constitute "clear direction from our legislature"—indeed, they were not even made by a

4   member of the legislature.  *See Segura*, 319 P.3d at 100.

5        Having determined the statute's language is silent and its legislative history

6   provides no clear direction as to emotional damages, the court next looks to other

7   interpretive canons Washington courts have prescribed.[10]  *See id.*  In interpreting statutes

8   that are silent as to the availability of emotional distress damages, Washington courts

9   have used the requisite degree of culpability as a proxy for whether the legislature

10  intended to make emotional damages available.  *White River*, 953 P.2d at 798.  "In the

11  absence of a clear mandate from the Legislature, Washington courts have 'liberally'

12  construed damages for emotional distress . . . if the wrong committed is in the nature of

13  an intentional tort."  *Id.*  In contrast, Washington law "decline[s] to allow emotional

14  distress damages where the statutory violation requires only proof of negligent, as

15  opposed to intentional, conduct."  *Id.* (citing *Wash. St. Physicians Ins. Exch. & Assn. v.*

16  *Fisons Corp.*, 858 P.2d 1054, 1065-66 (Wash. 1993) (en banc)); *see also Segura*, 319

17  P.3d at 100 ("The legislative history . . . does not indicate the intended scope of these

18

19  [10] Although Ms. Schreib rightly contends that remedial statutes are to be construed
    liberally to effectuate their purpose, *Int'l Ass'n of Fire Fighers, Local 46 v. City of Everett*, 42
    P.3d 1265, 1267 (Wash. 2002) (en banc), IFCA's treble enhanced damages provision makes it at
20  a minimum unclear whether it is indeed remedial in nature, *see F.C. Bloxom Co. v. Fireman's
    Fund Ins. Co.*, No. C10-1603RAJ, 2012 WL 5992286, at *7 (W.D. Wash. Nov. 30, 2012).  At
21  least one court has concluded that it "does not have a remedial purpose."  *Malbco Holdings, LLC
    v. AMCO Ins. Co.*, 546 F. Supp. 2d 1130, 1133 (E.D. Wash. 2008).  Even if it were deemed
    remedial, the court concludes that actual damages (not including emotional damages), attorney's
22  fees, and treble damages sufficiently advance those remedial goals.

ORDER- 17

1    words.  Absent some clear direction from our legislature, emotional distress damages are

2    recoverable solely if [the statute] sounds in intentional tort.").  Although subsequent case

3    law has not been quite as categorical as *White River* suggests, Washington courts

4    continue to use the line between negligence and greater degrees of culpability to evaluate

5    the availability of emotional distress damages.  *See Bylsma v. Burger King Corp.*, 293

6    P.3d 1168, 1172-73 (Wash. 2013) (en banc); *Segura*, 319 P.3d 98, 100 (Wash. Ct. App.

7    2014); *Johnson v. Cash Store*, 68 P.3d 1099, 1108 (Wash. Ct. App. 2003).

8        IFCA proscribes "unreasonable" denials of coverage or benefits.  *See generally*

9    RCW 48.30.015.  "When a person acts 'unreasonably' in light of the circumstances such

10   action is similar to negligence, not an intentional tort."  *White River*, 953 P.2d at 799.

11   Because IFCA's language is ambiguous as to emotional damages and it sounds in

12   negligence, the court concludes it excludes the availability of emotional damages as

13   "actual damages."[11]  Accordingly, summary judgment is appropriate with respect to that

14   aspect of Ms. Schreib's IFCA claim.

15       3.  Attorney's Fees and Other Litigation Costs Under the Insurance Fair Conduct
            Act and the Consumer Protection Act

16       American Family next argues that IFCA and the CPA's actual damages provision

17   do not include "attorneys' fees and other litigation costs," and contends that it is therefore

18

19   _____

20   [11] Ms. Schreib's argument that the enacting parties must have intended IFCA to be at
     least as broad as the existing tort of insurer bad faith is misguided, as IFCA's discretionary treble
     damages is already significantly "***more*** than the existing common law remedies." (Damages
21   Resp. at 13 (emphasis in original)); *see also Kirk*, 951 P.2d at 1127-28; *Dailey v. North Coast
     Life Ins. Co.*, 919 P.2d 589, 590-91 (Wash. 1996) (en banc) (citing the Washington Supreme
22   Court's "long-standing rule prohibiting punitive damages without express legislative
     authorization").

ORDER- 18

1    entitled to summary judgment on that issue.  Ms. Schreib alleges this is one of the six

2    "actual damages" suffered and seeks to recover accordingly.  (6/11/15 Rider Decl. ¶ 3,

3    Ex. 1 at 6.)  However, she does not seriously contest American Family's argument in her

4    response to its motion for partial summary judgment.  (*See generally* Damages Resp.)

5    Nonetheless, the court must consider the merits of the summary judgment motion, and

6    the burden remains on the moving party to satisfy Rule 56.  *See Martinez v. Stanford*, 323

7    F.3d 1178, 1182-83 (9th Cir. 2003).

8          A plain reading of IFCA makes clear that it distinguishes between "actual

9    damages" and "reasonable attorneys' fees and litigation costs."  RCW 48.30.015(1).  It

10    includes the latter among the "costs of the action," whereas the former is articulated

11    separately.  *Id.*  The CPA similarly makes a similar distinction, allowing recovery for

12    "actual damages sustained . . . , together with the costs of the suit, including a reasonable

13    attorney's fee."  RCW 19.86.090.  The clear implication is that actual damages are

14    separate and distinct, which precludes attorneys' fees and other litigation costs from

15    factoring into the maximum enhanced damages made available to plaintiffs.  Washington

16    courts have already made this determination when considering the CPA.  *See, e.g., Sign-*

17    *O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 825 P.2d 714, 721 (Wash. Ct. App. 1992).

18

19

20

21

22

ORDER- 19

1    Because the term "actual damages," as used in IFCA and the CPA, does not

2    include attorneys' fees or other litigation costs, summary judgment is appropriate with

3    respect to that aspect of Ms. Schreib's IFCA claim.[12]

4    **C.    *Olympic Steamship* Fees**

5         In its second motion for partial summary judgment American Family argues that

6    no reasonable juror could conclude Ms. Schreib is entitled to *Olympic Steamship* fees.

7    *See Olympic S.S. Co. v. Centennial Ins. Co.*, 811 P.2d 673 (Wash. 1991) (en banc).  As

8    Washington courts have unequivocally recognized for decades, *Olympic Steamship* fees

9    are awarded "only when an insurer wrongfully denies 'coverage' as distinguished from

10   the situation where 'coverage' is conceded but the claim fails or recovery is diminished

11   on its factual merits."  *Greengo v. Pub. Emps. Mut. Ins. Co.*, 959 P.2d 657, 665 (Wash.

12   1998) (en banc).  Ms. Schreib agrees that American Family did not "deny" her coverage

13   in the relevant sense, and thus there is no dispute that *Olympic Steamship* fees are

14   unavailable.[13]  (See *Olympic Steamship* Resp. at 3.)  Accordingly, summary judgment is

15   appropriate with respect to *Olympic Steamship* fees.[14]

16   _____

17        [12]  American Family moves to strike various portions of the Moore Declaration (Dkt.
     # 72-1), Davis Declaration (Dkt. # 72-3), and Schreib Declaration (Dkt. # 72-5) as hearsay,
18   inadmissible opinion testimony, lacking foundation, and otherwise improper.  (Dkt. # 73.)
     American Family also moves to strike Ms. Schreib's cross-motion for partial summary judgment.
19   (*Id.*)  Because the court makes its determination without considering those portions of the
     declarations, and because the court denies Ms. Schreib's cross-motion for summary judgment,
20   American Family's motions to strike are denied as moot.

21        [13]  The parties are advised that the court will not tolerate such unnecessary motions
     practice.  American Family points to nowhere on the record where Ms. Schreib raised the issue
22   of *Olympic Steamship* fees, nor would any claim for such fees rise above frivolity, but American
     Family nonetheless saw fit to file a 14-page motion for partial summary judgment on the issue.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS both of American Family's motions for partial summary judgment.  (Dkt. ## 67, 75) and DENIES Ms. Schreib's cross-motion (Dkt. # 72).  The arbitration award is not an appropriate measure of "actual damages" for violating IFCA or the CPA or for committing the tort of bad faith.  Emotional distress damages are not "actual damages" under IFCA.  Attorneys' fees and other litigation costs are not "actual damages" under IFCA or the CPA.  *Olympic Steamship* fees are unavailable to Ms. Schreib.

Dated this 31st day of August, 2015.

JAMES L. ROBART
United States District Judge

---

(*See Olympic Steamship* Mot.)  In the future, the parties are directed to confer and use stipulated motions to handle such undisputed matters.

Furthermore, counsel for defendant has on several occasions flaunted the local rules.  In this instance, the most grievous violation is of Local Rule 7(e)(3), which requires leave of the court to "file contemporaneous dispositive motions, each [of which is] directed toward a discrete issue or claim."  Local Rules W.D. Wash. LCR 7(e)(3).  Accordingly, the court will issue an order to show cause as to why defense counsel should not face sanctions for these repeated violations.  If American Family's offending motion for partial summary judgment were on an opposed issue, the court would be inclined to strike the motion for failure to comply with the local rules.  Because of the proximity of trial in this case, and the lack of dispute as to American Family's motion for partial summary judgment on *Olympic Steamship* fees, the court opts to decide both motions herein.

[14] This determination has no bearing on the availability of statutory attorneys' fees under IFCA or the CPA.  (*See Olympic Steamship* Resp. at 3-4.)

ORDER- 21